### DAVIS et al. v. WILSON.

(Circuit Court of Appeals, Eighth Circuit.   November 5, 1921.)

#### No. 5784.

1. **Fraud ⊗⟞3—Elements stated.**
   To constitute actionable "fraud," it must appear that the defendant made a material representation; that it was false; that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth as a positive assertion, with the intention that it should be acted upon; and that plaintiff acted in reliance upon it to his injury.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraud.]

2. **Fraud ⊗⟞58(1)—Evidence held not to show fraud in sale of mineral land.**
   In action for fraud in the selling of real estate, evidence *held* to show that no intentional misrepresentation was made by defendants in their sale of "placer mining claims" to plaintiff as to the nature of their title, and that plaintiff was not deceived.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by Leonard A. Wilson against Charles W. Davis and others. Judgment for plaintiff and defendant named, and defendants Goering and Emmons bring error. Reversed and remanded for new trial.

C. M. Botts, of Albuquerque, N. M. (H. C. Denny, of Gallup, N. M., and John F. Simms, of Albuquerque, N. M., on the brief), for plaintiffs in error.

A. T. Hannett, of Gallup, N. M. (Bert D. Richards, of Gallup, N. M., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

YOUMANS, District Judge. This was a suit by defendant in error against ten defendants in the court below. Four of the defendants were served with process. The suit was dismissed against one of these four, leaving three defendants below, Charles W. Davis, L. R.

Goehring, and John J. Emmons. A written stipulation was filed waiving a jury. Judgment was rendered against Davis, Goehring, and Emmons, and they bring error. The complaint alleged fraud and deceit in the selling of certain real estate; the fraud as charged being that the plaintiffs in error represented to defendant in error Wilson, plaintiff below, that they owned the fee-simple title to a certain tract of land in McKinley county, N. M., that they did not in fact own the fee-simple title to said land, that plaintiff believed the representations made to him, and acting thereon purchased the land from the plaintiffs in error and paid them the purchase price therefor. The testimony shows that each of the plaintiffs in error made a power of attorney to one G. S. Willhoite. These separate powers of attorney were the same as to the terms. That of Davis reads as follows:

"Know all men by these presents, that I, Charles W. Davis, do hereby nominate, constitute and appoint G. S. Willhoite of the county of McKinley my true and lawful attorney in fact for me and in my place and stead, to locate for me and in my name, placer or oil claims upon the public domain of the United States of America in the county of McKinley, and upon the location of such claims to enter into contracts of lease or sale of the same, and in my name to execute good and sufficient instruments of lease or conveyance of the same and to do everything requisite or necessary in and about the handling of said oil locations as my attorney in fact may seem meet, hereby ratifying and confirming everything my said attorney in fact may or can do in the premises, with full power of substitution and revocation."

The testimony also shows that certain representations were made to Wilson by a Mr. Brown and a Mr. Smith and G. S. Willhoite. It appears from the testimony that Willhoite acting for himself and certain persons who had given him powers of attorney, including the three plaintiffs in error, had located certain placer or oil claims upon the public lands in McKinley county, N. M. Brown and Smith had entered into an agreement with Willhoite to purchase these claims. Brown and Smith became acquainted with Wilson and began negotiations to sell him the claims. Brown and Smith had contracted to buy the claims at $3 per acre, and in their negotiations with Wilson they agreed to sell him the same claims at $10 per acre. Wilson's testimony shows that he knew that the property was a placer claim and that the title was in the United States. Wilson testified as follows:

"Q. What was said by Smith relative to the ownership of this land, that is, relative to who owned it and who had the right to sell it? A. Mr. Smith told me that the land was owned by Mr. Willhoite and at that time they would not be able to give me a warranty deed which I asked for, but that they had an absolutely good title to the land. * * *

"Q. Relate to the court what happened after the price was quoted relative to closing the deal; how was that done? A. After the price was made to me of $10 an acre, and after he showed me geological reports, he told me that the well had been tested, and he showed me a telegram to that effect, that it was making 72 barrels a day. * * * He said that since the land had been priced to me at $10 an acre and the well had been tested and was a better well than they had expected, that the price had jumped to $20.

"The Court: Was this well on this particular piece of land? A. It was not, but supposed to be near it. He told me that it affected the price, but he would go ahead and give me the deed since we had started transactions, and that he considered it a very good buy. He was familiar with the field,

but he would give me a placer claim title. I told him I did not understand that and before I would turn over my money I would have to be guaranteed a title. * * *

"Q. When you first had the conversation relative to the property the purchase of it in the hotel were both Brown and Smith present? A. Mr. Brown told me Smith would be in in a day or two and he would explain fully the status of the placer filing; he was connected with the Carter Oil Company. When he did arrive, we went up to the room, and he explained about placer claims being subject to good faith, just as good as a man would want.

"Q. What did he say as to the title; did he describe it in any way about any interest that the government might have in the land? A. He said that they had relinquished—that the government had—to Mr. Willhoite, and that the only reason he didn't have a patent to the land was there was a certain time had to pass before it would be issued; but that's all it depended on and then he would get a patent; that the title he would give me would be just as good as required; that the Carter Oil Company had several and that a placer title is just as good as a school lease. I told him I didn't understand it and would want a recommendation from a bank, a strong bank, as to the veracity of these men who were selling the land; that if they could recommend them and give me a certificate of title we would talk business."

Wilson himself then sent the following telegram to the Gallup State Bank, Gallup, N. M.: "Wire opinion of placer filings as sold by G. S. Willhoite." Wilson received the following reply to that telegram from the Gallup State Bank: "It is our opinion that Placer locations as sold by Willhoite are as represented. Seven Lakes field from present reports looks promising." It is thus seen that the representation made by Smith and Brown to Wilson was that the land was a placer claim; that the title was in the United States; that Wilson in his telegram made inquiries about "placer filings," and received a reply with reference to "placer locations." The deed executed by Willhoite in his own name and in the names of those whom he represented by powers of attorney contained this paragraph:

"It being understood by the said party of the second part, that this quitclaim is to lands that have been located in Seven Lakes mining district as placer mining claims under the laws of the state of New Mexico and of the United States of America, and are subject to the conditions and provisions relating to said placer mining claims and are taken with full knowledge of locater's rights to enter and dispose of same and are accepted as such and not otherwise."

Plaintiff also introduced a certificate of title made by one Perry E. Coon. That certificate contained the following statement:

"I hereby certify that I am an abstractor in and for the above county and that I have examined the records in the office of the register of deeds, etc., covering the following described land, in said county and state, to wit:

"The north half (½) and southwest quarter (¼) sec. 10, T. 19 N., R. 11 W.

"Section 10, township 19, range 11, containing 480 acres more or less and find the fee-simple title to said land to be in G. S. Willhoite, et al., placer mining claims."

Plaintiffs in error contend that the defendant in error could have had this certificate at the time of the delivery of the deed. Under the finding of the court based on the testimony of the plaintiff in error, it must be taken that he had this certificate in his hand at the time the deed was delivered.

Coon, the man who made the certificate, was called by Wilson and testified with reference to the making of the certificate. On cross-examination he testified as follows:

"Q. When did you make this certificate? A. It must have been made on October 20th.

"Q. Did you postdate it or antedate it? A. No, sir.

"Q. Did you make it on the date upon which it purports to have been made? A. Yes, sir.

"Q. How did you happen to certify that that was a fee-simple title? A. It must have been an oversight; I didn't know that I wrote that.

"Q. You did state it was a placer oil location? A. Yes, sir.

"Q. Did you intentionally make that certificate?

"Mr. Hannett: Objected to as immaterial.

"The Court: Overruled.

"A. I did not.

"Q. In what particular way were you well acquainted with the oil filings in that locality? A. I had just completed a map of the Seven Lakes district showing all the locations.

"Q. You are a surveyor? A. No, sir.

"Q. How did you make this map? A. From the records of the county clerk's office and superintendent's office.

"Q. And had just completed that map? A. Yes, sir.

"Q. What kind of an abstract did Mr. Willhoite ask you to make? A. He asked me to look over the records and see that there was no prior locations other than his on this particular tract of land.

"Q. Did he ask you to certify that it was a fee-simple title in him?

"Mr. Hannett: Objected to as being hearsay and not in the presence or binding upon the plaintiff.

"The Court: Overruled.

"A. No, sir.

"Q. You just overlooked scratching that out of the printed form?

"Mr. Hannett: Objected to as immaterial; he has already testified to that.

"The Court: Objection overruled.

"A. Yes, sir."

The certificate contained a contradictory statement, in that it states that the abstractor finds the fee-simple title in said land to be in G. S. Willhoite et al. placer mining claims. The words "fee-simple" have a distinct meaning. The words "placer mining claims" also have a distinct meaning.

[1, 2] It further appears from the testimony that after Wilson had received his deed he secured other placer locations in the same vicinity. It afterwards developed that the land upon which all of the placer locations had been made had been withdrawn from entry by order of the President dated May 18, 1911. The testimony clearly shows that no intentional misrepresentation was made to Wilson and that he was not deceived as to the title his grantor claimed to have. It did turn out that the particular entries constituting the lands sold to him had been withdrawn from entry, but it does not appear that this fact was known at the time to the plaintiffs in error.

The essentials necessary to make out a case of fraud and deceit are as follows:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he

made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. A maxim announced in an early English case and ever since recognized as correct is that fraud without damage or damage without fraud is not actionable, but that where both concur an action of deceit will lie." 20 Cyc. 13.

It fully appears that Wilson received nothing for the money and property that he paid for the land. He may have a good cause of action for the value of the property and the money that he transferred in payment for these placer mining claims, against some one or more of the parties to the transaction. About this, however, we express no opinion. The findings made by the court were not warranted by the testimony.

The judgment, therefore, is reversed, and the cause is remanded for a new trial.